**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANTHONY GARIBALDI,
an individual,

                              Case No.:

      Plaintiff,

v.

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY d/b/a
AMERICAN EDUCATION SERVICES, and
EQUIFAX INFORMATION
SERVICES, LLC,, and
NATIONAL ENTERPRISE SYSTEMS, INC., and
TRANSWORLD SYSTEMS INC., and
KENNETH L. SALOMONE, P.A. d/b/a
SALOMONE LAW GROUP, and
MRS BPO, L.L.C

      Defendants.
_____/

## **COMPLAINT**

     **COMES NOW**, Plaintiff, ANTHONY GARIBALDI (hereinafter, "Plaintiff

or "Garibaldi"), by and through the undersigned counsel, and hereby sues

Defendants, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY

d/b/a AMERICAN EDUCATION SERVICES (hereinafter "PHEAA") and

EQUIFAX INFORMATION SERVICES, LLC., (hereinafter, "EQUIFAX"),

NATIONAL ENTERPRISE SYSTEMS, INC. (hereinafter, "NES"),

TRANSWORLD SYSTEMS INC., (hereinafter, "TSI"), KENNETH L.

1

SALOMONE, P.A. d/b/a SALOMONE LAW GROUP (hereinafter, "SALOMONE"), and MRS BPO, L.L.C. (hereinafter, "MRS") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, "FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 *et seq.* (hereinafter "FDCPA"), wherein Defendants unlawfully attempted to collect a consumer debt directly from Plaintiff, which Plaintiff does not owe.

2.     Further, this is an action brought by Plaintiff for damages for PHEAA and EQUIFAX's violation of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein PHEAA unlawfully reported erroneous and fictitious information on Plaintiff's EQUIFAX consumer credit report.

## JURISDICTION, VENUE & PARTIES

3.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

4.     Defendants are subject to the jurisdiction of this Court as they regularly transact business in this District.

5.      Venue is proper in this District as Defendants' transactions described herein occur in this District.

6.      At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

## FCCPA AND FDCPA STATUTORY STRUCTURE

7.      The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

8.      The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

9.      Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of

information regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

10.     For example, the FDCPA prohibits a debt collector from attempting to collect a debt that is not owed.   *See* 15 U.S.C. §§ 1692(e) and 1692(e)(2)(A).

11.     Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt from a debtor that they know is not legitimate.   *See* Fla. Stat. § 559.72(9).

## GENERAL ALLEGATIONS

12.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and the FDCPA.

13.     At all material times herein, PHEAA is a "creditor" as defined by Florida Statutes, Section 559.55(5).

14.     At all material times herein, NES, TSI, SALOMONE, and MRS are "debt collectors" as defined by the FDCPA.

15.     At all material times herein, PHEAA is a foreign entity that does business in Florida and is a "creditor" as defined by the FCCPA.

16.     At all material times herein, PHEAA is also a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

17.     At all material times herein, EQUIFAX is a foreign limited liability

company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, GA 30309.

18.     At all material times herein, EQUIFAX is also a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. EQUIFAX disburses such consumer reports to third parties under contract for monetary compensation.

19.     At all material times herein, PHEAA, itself and through its subsidiaries, regularly services private student loans—and collects debts associated with the same—from consumers in Hillsborough County, Florida.

20.     At all material times herein, PHEAA attempts to collect consumer debt from Plaintiff, including but not limited to, two student loan balances allegedly due from Plaintiff referenced by two account numbers beginning 608954- (hereinafter, the "Debt").

21.     At all material times herein, the Debt is a consumer debt, an obligation resulting from transactions for goods or services incurred primarily for personal,

household, or family use.

22.     At all material times herein, PHEAA's conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by the FCCPA.

23.     PHEAA furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to Equifax in order to compel or coerce the debtor to either satisfy the alleged balance or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

24.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

25.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived the same.

## FCRA STATUTORY STRUCTURE

26.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

27.     Under the FCRA, whenever a consumer reporting agency prepares a

6

consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

28.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

29.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

30.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

31.    Under the FCRA, after a furnisher of information receives notification

pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

32.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

33.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer

as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

34.     At all material times herein, PHEAA, itself and through its subsidiaries, regularly services private student loans—and collects debts associated with the same—from consumers in Hillsborough County, Florida.

35.     At all material times herein, PHEAA attempts to collect consumer debt from Plaintiff, including but not limited to, two student loan balances allegedly due from Plaintiff referenced by account numbers beginning 608954- (hereinafter, the "Debt").

36.     At all material times herein, the Debt is a consumer debt, an obligation resulting from transactions for goods or services incurred primarily for personal, household, or family use.

37.     At all material times herein, PHEAA's conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by the FCCPA.

38.     PHEAA furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to EQUIFAX in order to compel or coerce the debtor to either satisfy the alleged balance or suffer the consequences of

delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

39.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

40.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived the same.

## FACTUAL ALLEGATIONS

### Unlawful Debt Collection Facts

41.     On or about March 7, 2019, The United States Bankruptcy Court for the Middle District of Florida entered a Final Default Judgment discharging Plaintiff's indebtedness to the Debt at issue. A true and correct copy the Final Default Judgment is attached hereto as **Exhibit A.**

42.     Despite this, PHEAA and the other Defendants (except Equifax) continued to dun Plaintiff with collection letters claiming he still owed the Debt.

43.     On March 9, 2020, NES sent Plaintiff a collection letter (hereinafter, "NES Collection Letter"), via US Mail, in attempts to collect the Debt. A true and correct copy of the NES Collection Letter is attached as **Exhibit B.**

44.     On March 28, 2020, TSI sent Plaintiff a collection letter (hereinafter, "TSI Collection Letter"), via US Mail, in attempts to collect the Debt. A true and

correct copy of the TSI Collection Letter is attached as **Exhibit C.**

45.     On August 7, 2020, MRS sent Plaintiff a collection letter (hereinafter, "MRS Collection Letter") via US Mail, in attempts to collect the Debt. A true and correct copy of the MRS Collection Letter is attached as **Exhibit D.**

46.     On October 30, 2020, Salomone sent Plaintiff a collection letter (hereinafter, "Salomone Collection Letter") via US Mail, in attempts to collect the Debt.  A true and correct copy of the Salomone Collection Letter is attached as **Exhibit E.**

## Unlawful Credit Reporting Facts

47.     On or about October 2020, Plaintiff obtained copies of his credit report from EQUIFAX.

48.     According to the immediately-aforementioned reports, PHEAA inaccurately reported the Debt to EQUIFAX claiming he owed $8,472.00 on one account and $14,080.00 on the second account.

49.     On or about October 22, 2020, with legal counsel's assistance, Plaintiff sent a letter to PHEAA and EQUIFAX disputing the inaccurate information PHEAA communicated and reported on Plaintiff's credit report (hereinafter, "First Dispute" or "First Dispute Letter").  A true and correct copy of the First Dispute Letter is

attached as **Exhibit F.**

50.    EQUIFAX  received the First Dispute, and communicated Plaintiff's First Dispute to PHEAA.

51.    In response, PHEAA and EQUIFAX responded and incorrectly verified that the balances were still owed.

52.    On or about December 11, 2020, legal counsel, on behalf of Plaintiff, sent another dispute letter to PHEAA and EQUIFAX *again* disputing the objectively inaccurate errors contained in Plaintiff's credit report (hereinafter, "Second Dispute Letter").  A true and correct copy of the Second Dispute Letter is attached as **Exhibit G.**

53.    Along with the Second Dispute Letter, Plaintiff included Exhibit A, which definitively proves that Plaintiff does not owe the Debt.

54.    EQUIFAX  received  Plaintiff's  Second  Dispute  Letter  and communicated the same to PHEAA.

55.    In response to the Second Dispute Letter, PHEAA and EQUIFAX again improperly verified the Debt.  A true and correct copy of the Second Dispute Results are attached as **Exhibit H.**

56.    Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable

fee for their services.

57.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff should Plaintiff prevail in this matter against PHEAA and EQUIFAX.

58.     As a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, loss of sleep, and confusion.

59.     Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Debt and that Plaintiff would instead pay higher interest rates in the event he obtained financing.

60.     Plaintiff suffered additional actual damages in the form of damage to his credit reputation, higher credit costs, and Plaintiff refrained from applying for new credit for fear that he would be denied because of the objectively inaccurate reporting referenced herein.

61.     Florida Statutes, Section 559.77 provides for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, an award of attorneys' fees, and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

62.     The FDCPA provides for the award of up to $1,000.00 statutory

damages, actual damages, an award of attorneys' fees, and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICES –
## VIOLATION OF FLORDA STATUTES, SECTIONS 559.72(9)

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further states as follows:

63.     PHEAA is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect a debt that they knew was not legitimate.

64.     As a direct and proximate result of PHEAA's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT TWO:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e and
## 1692e(2)(A)

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further state as follows:

65.     NES, TSI, SALOMONE, and MRS is subject to, and violated the provisions of, United States Code, Sections 1692e and 1692e(2)(A) by attempting to collect the Debt, which is not owed.

66.     Accordingly, they violated 15 United States Code, Sections 1692e and 1692e(2)(A).

67.     As a direct and proximate result of their actions, Plaintiff sustained damages as defined by United States Code, Section 1692k.

**COUNT THREE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further states as follows:

68.     PHEAA is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit report, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that EQUIFAX delete the Debt from Plaintiff's credit report and credit file after re-investigating Plaintiff's dispute.

69.     PHEAA's refusal to request that EQUIFAX delete the Debt was intentionally, willfully, and knowingly done.

70.     PHEAA's re-investigation was not conducted in good faith.

71.     PHEAA's re-investigation was not conducted reasonably.

72.     PHEAA's re-investigation was not conducted using all information reasonably available to PHEAA.

73.    As a result of PHEAA's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of PHEAA's derogatory and continued reporting the Debt as owed and did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Debt as owed resulting in the Debt being reported as a derogatory, negative, or adverse tradeline account.

74.    PHEAA's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

75.    PHEAA's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT FOUR:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further states as follows:

76    Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

77.    Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Debt.

78.    Further, Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Equifax credit reports and credit file.

79.    For example, despite Plaintiff's repeated disputes of the inaccuracies in his credit reports, Equifax did not request any documents from PHEAA supporting PHEAA's reporting of the Debt.

80.    Such reporting of the Debt is false and evidences Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

81.    Importantly, Equifax possessed actual knowledge that Plaintiff did not owe a balance on the Debt from *no less than* two (2) disputes sent directly to Equifax, which explained why he did not owe the Debt, enabling Equifax to easily identify

that Plaintiff could not and did not owe any balance to PHEAA on the Debt.

82.    As a result of Equifax's conduct, actions, and inactions, Plaintiff incurred less favorable terms on consumer loans and other consumer transactions, and was deterred from making additional credit applications as he believed they would not be able to obtain favorable credit terms as a result of Equifax's derogatory and erroneous reporting of the Debt and did not wish to further damage his credit score with futile credit inquires.

83.    Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

84.    Equifax's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)**

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further states as follows:

85.    Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files.

86.    Specifically, Equifax willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

87.    Additionally, rather than conduct its own, independent re-investigation, Equifax solely relied on PHEAA's blanket and parroted assertions that Plaintiff owed a balance to PHEAA on the Debt.

88.    Equifax did not request any documents from PHEAA corroborating information furnished and verified by PHEAA to Equifax regarding Plaintiff and the Debt in response to any of Plaintiff's disputes.

89.    Overall, Equifax continues to inaccurately report the Debt with a balance due as of the date of this Complaint.

90.    As such, Equifax's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Debt was inaccurate and Equifax failed to subsequently update the inaccurate information in Plaintiff's credit reports and credit files.

91.    Such reporting is false and evidences Equifax's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

92.    Equifax's reinvestigations of Plaintiff's disputes were not conducted reasonably.

93.    Equifax's reinvestigations merely copied and relied upon the inaccurate Debt information conveyed by PHEAA.

94.    Equifax's reinvestigations of Plaintiff's disputes were not conducted in good faith.

95.    Equifax's reinvestigation procedures are unreasonable.

96.    Equifax's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Equifax.

97.    Equifax's reinvestigations were *per se* deficient by reason of these failures in Equifax's reinvestigations of Plaintiff's disputes and the Debt.

98.    As a result of Equifax's conduct, actions, and inactions, Plaintiff incurred less favorable terms on consumer loans and other consumer transactions, and was deterred from making additional credit applications as he believed he would not be able to obtain favorable credit terms as a result of Equifax's derogatory and erroneous reporting of the Debt and did not wish to further damage his credit score with futile credit inquires.

99.    Equifax's actions in violation of 15 United States Code, Section

1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT SIX:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)

Plaintiff re-alleges paragraph one (1) through sixty-two (62) as if fully restated herein and further states as follows:

100.   Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

101.   Specifically, despite receiving Plaintiffs' First Dispute, and Second Dispute , each of which explained in detail why Plaintiff did not owe the Debt, allowing Equifax to determine that Plaintiff could not and did not owe a balance on the Debt, Equifax *continued* to report the Debt with a balance due and as significantly past-due.

102.   Equifax's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

103.   As a result of Equifax's conduct, actions, and inactions, Plaintiff incurred less favorable terms on consumer loans and other consumer transactions,

and was deterred from making additional credit applications as he believed he would not be able to obtain favorable credit terms as a result of Equifax's derogatory and erroneous reporting of the Debt and did not wish to further damage his credit score with futile credit inquires.

104.    Equifax's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 USC, Sections 1681n or 1681o, or both.

**COUNT SEVEN:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)**

Plaintiff re-alleges paragraphs one (1) through sixty-two (62) as if fully restated herein and further states as follows:

105.    Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

106.    Specifically, despite receiving Plaintiff's First Dispute and Second Dispute, each of which explained in detail why he did not owe the Debt, allowing Equifax to determine that Plaintiff could not and did not owe a balance on the Debt and its reporting of the Debt was inaccurate, Equifax *continued* to report the Debt

with a balance due and as significantly past-due.

107.   Despite Plaintiff's repeated disputes of the inaccuracies in his credit reports, Equifax did not request any documents from PHEAA supporting PHEAA's reporting of the Debt and therefore could not possibly independently verify PHEAA's reporting of the Debt.

108.   As a result of Equifax's conduct, actions, and inactions, Plaintiff incurred less favorable terms on consumer loans and other consumer transactions, and was deterred from making additional credit applications as he believed he would not be able to obtain favorable credit terms as a result of Equifax's derogatory and erroneous reporting of the Debt and did not wish to further damage his credit score with futile credit inquires.

109.   Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, Plaintiff's serious injuries, damages, and harm as more fully stated herein.

110.   Equifax's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 USC, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.      Judgement against PHEAA for maximum statutory damages for violations of the FCCPA;

b.      Judgment against NES, TSI, Salomone, and MRS for maximum statutory damages for violations of the FDCPA;

c.      Judgment against PHEAA for maximum statutory damages for violations of the FCRA;

d.      Judgment enjoining PHEAA from engaging in further conduct in violation of the FCRA;

e.      Judgment against Equifax for maximum statutory damages for violations of the FCRA;

f.      Judgment enjoining Equifax from engaging in further conduct in violation of the FCRA;

g.      Actual damages in an amount to be determined at trial;

h.      Compensatory damages in an amount to be determined at trial;

i.      Punitive damages in an amount to be determined at trial;

j.      An award of attorney's fees and costs; and

k.      Any other such relief the Court may deem proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Jon P. Dubbeld*

**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
10460 Roosevelt Blvd. North
Suite 313
St. Petersburg, FL 33703
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Attorneys for Plaintiff*